**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ALEXANDER HARRIS**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NOKIA OF AMERICA CORPORATION**, a Delaware corporation,<br><br>Defendant. | Case No: 3:26-cv-716<br><br>Hon.<br><br>Mag. |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Alexander Harris ("Plaintiff"), by and through his undersigned attorneys, hereby brings this Collective and Class Action against Nokia of America Corporation ("Defendant") and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to himself and upon information and belief as to all other matters.

2. Defendant Nokia of America Corporation holds itself out as being a global leader in B2B connectivity and network infrastructure.[1]

---

[1] https://www.nokia.com/we-are-nokia/ (last visited Feb. 3, 2026)

3. In providing the above-described services, Defendant employed hourly employees in multiple locations throughout the United States, including the State of Pennsylvania. Defendant used a number of job titles including, but not limited to, Technician, to refer to its hourly employees (collectively referred to herein as "Hourly Employees").

4. Defendant classified its Hourly Employees as non-exempt.

5. Defendant required its Hourly Employees to wear personal protective equipment ("PPE") when working in its manufacturing facilities.

6. Defendant required Plaintiff and other Hourly Employees to change into ("don") and change out of ("doff") the PPE before and after their work shifts in designated locations at Defendant's manufacturing facilities and trained and instructed its Hourly Employees not to record this time in Defendant's timekeeping system.

7. Defendant knew or could have easily determined how long it took Plaintiff and its Hourly Employees to complete their donning and doffing, and Defendant could have properly compensated Plaintiff and its Hourly Employees for this pre- and post-shift work but deliberately chose not to.

8. Defendant also maintained a policy and practice requiring Plaintiff and other Hourly Employees to work through their unpaid 30-minute meal periods yet still required them to record a 30-minute unpaid meal period in Defendant's ADP EzLabor timekeeping system. As a result, Plaintiff and the Hourly Employees performed compensable work during their meal periods but were not paid for that time because their time records reflected an unpaid meal break regardless of the work performed.

9. Defendant's practice of failing to compensate Plaintiff and its Hourly Employees for all hours worked violated the Hourly Employees' rights under the FLSA.

10. Defendant is liable for its failure to pay its Hourly Employees for all work performed.

11. Defendant additionally violated the FLSA by failing to include shift differential pay and/or other non-discretionary remuneration in Hourly Employees' regular-rate calculations, resulting in underpayment of overtime wages in violation of the FLSA.

12. Plaintiff seeks a declaration that his rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

13. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

15. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

16. Defendant's annual sales exceed $500,000 and it has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

17. This Court also has supplemental jurisdiction over Plaintiff's state-law claims

pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

18. Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Defendant is incorporated in this District and subject to personal jurisdiction in this District.

## PARTIES

19. Plaintiff is an adult resident of Macungie, Pennsylvania and worked for Defendant in Allentown, Pennsylvania from approximately September 20, 2022, through November 5, 2025. Defendant compensated Plaintiff for his services in the form of an hourly wage, most recently at the rate of $25.83 per hour. Plaintiff's consent to joint form is attached as **Exhibit A**.

20. Additional putative Collective members were or are employed by Defendant as Hourly Employees during the past three (3) years and their consent to join forms will also be filed in this case.

21. Defendant's registered agent for service of process is listed as Prentice Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

22. Defendant is an "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. § 201, *et seq*.

## GENERAL ALLEGATIONS

23. Prior to hiring prospective Hourly Employees, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

24. Defendant maintained documents demonstrating the promised hourly wage for each Hourly Employee, including, but not limited to: offer letters, paystubs, and/or other payroll

records.

25. On or about September 20, 2022, Plaintiff received an offer from Defendant to work as an Hourly Employee, and he accepted Defendant's offer with the understanding that his base hourly rate would be paid for all hours worked.

26. Plaintiff performed and fulfilled his duties under his agreement with Defendant by carrying out his job responsibilities which included, but were not limited to, the off-the-clock work described herein.

27. Defendant paid its Hourly Employees at varying hourly rates.

28. In addition to the base rate of pay, Defendant incorporated various types of routine and/or non-discretionary pay into its payment structure. For example, Defendant paid Hourly Employees, like Plaintiff, shift premium pay.

29. Defendant's Hourly Employee jobs are and were full-time positions that required forty (40) or more hours of work in a workweek.

30. Throughout Plaintiff's employment with Defendant, Plaintiff regularly worked more than forty (40) hours in a workweek.

31. Defendant provided training to Plaintiff and its Hourly Employees on, *inter alia*, how to carry out their day-to-day job responsibilities and Defendant's policies. The training that all of Defendant's Hourly Employees received was substantially, if not entirely, the same.

32. At all relevant times, Defendant controlled Plaintiff's and all other Hourly Employees' work schedules, duties, protocols, applications, assignments, and employment conditions.

**A. Pre-Shift/Post-Shift Off-the-Clock Work**

33. Defendant required Plaintiff and the hourly employees to don and doff company-issued PPE before and after their work shifts at a designated location at Defendant's facility. Before their scheduled shifts, and before beginning production activities, Plaintiff and the Hourly Employees were required to don their company-issued PPE, including but not limited to, electrostatic discharge ("ESD") shoes and smocks.

34. Defendant required Plaintiff and the Hourly Employees to wear PPE throughout their shifts.

35. The pre-shift donning process took Plaintiff and the Hourly Employees substantial time on a daily basis, ranging from two (2) to four (4) minutes per shift, and occurred before the start of their scheduled shifts. Thereafter, Plaintiff and the Hourly Employees were trained and instructed to manually enter their scheduled shift start time into Defendant's ADP EzLabor program, which was then reviewed and approved by the shift supervisor/manager.

36. At the end of each shift, Plaintiff and the Hourly Employees were required to clock out before walking to the locker rooms to doff their PPE.

37. The post-shift doffing process took Plaintiff and the Hourly Employees substantial time on a daily basis, ranging from two (2) to four (4) minutes per shift, and occurred after their scheduled shifts concluded, and after they were no longer clocked into Defendant's timekeeping system. Plaintiff and the Hourly Employees were trained and instructed to manually enter their scheduled shift end time into Defendant's ADP EzLabor program, which was reviewed and approved by the shift supervisor/manager, before removing their required PPE.

38. Consequently, Plaintiff and the other Hourly Employees performed uncompensated, off-the-clock work in the range of four (4) to eight (8) minutes per shift.

39. The process of donning and doffing the PPE was compensable because Defendant required Plaintiff and its Hourly Employees to wear the PPE during their work shifts and to don and doff the PPE at the worksite.

40. Additionally, the PPE was an integral part of Plaintiff's and the Hourly Employees' principal work activities, as Plaintiff and the Hourly Employees could not safely and effectively perform their job duties, including processing and packaging of Defendant's products and complying with Defendant's operational requirements, without wearing the PPE.

41. Defendant, however, did not pay Plaintiff and the Hourly Employees for this compensable time. Instead, Defendant paid them based on the times entered into Defendant's ADP EzLabor timekeeping system, which reflected their scheduled shift times rather than the actual work time. Because Plaintiff and the Hourly Employees were required to don their PPE prior to the start of their scheduled shifts and doff their PPE after the end of their scheduled shifts, and only record their scheduled shift hours in the ADP EzLabor program, Plaintiff and the Hourly Employees were not paid for all hours worked, including time beginning with their first principal activity and ending with their last principal activity of the workday.

42. Defendant knew or could have easily determined how long it took Plaintiff and the Hourly Employees to complete their donning and doffing, and Defendant could have properly compensated Plaintiff and the Hourly Employees for this pre- and post-shift work but deliberately chose not to.

## B. <u>Donning and Doffing PPE at the Worksite are Principal Work Activities and Are Compensable Under the FLSA</u>

43. Defendant required Plaintiff and the Hourly Employees to wear the PPE during their work shifts in order to protect the processing and packaging of its products.

44. Additionally, the PPE was an integral and indispensable part of Plaintiff and the

Hourly Employees' principal work activities, as Plaintiff and the Hourly Employees could not accurately perform their production activities without wearing it.

45. Donning and doffing protective clothing and safety gear are principal activities under the Portal-to-Portal Act, 29 U.S.C. § 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in their first principal activity and before they finish their last principal activity, is part of a "continuous workday" and is compensable under the FLSA.

46. The determination of whether donning and doffing a safety uniform is compensable begins with *Steiner v. Mitchell*, 350 U.S. 247 (1956), the seminal case on the subject. In *Steiner*, the Supreme Court held that donning and doffing uniforms was compensable when employees handling dangerous chemicals in a wet storage battery factory were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id*. at 248.

47. The factory workers in *Steiner* were exposed to high levels of lead particles (dust and fumes), which "permeate[d] the entire plant and everything and everyone in it." *Id*. at 249. Lead dust attached to the skin, hair, clothing and shoes of the employees, and presented significant risks to family members of the workers because toxic particles could be "brought home in the workers' clothing or shoes." *Id*. at 250.

48. Consequently, the workers were issued old but clean clothes on-site and were required to don and doff the clothes at the factory and shower on the premises before leaving in order to minimize health risks to themselves and others. *Id*. at 255. Under these circumstances, the Court had "no difficulty" concluding that these dress-related activities were compensable under the FLSA. *Id*.

49. Following the Supreme Court's decision in *Steiner*, the Department of Labor ("DOL") issued regulations providing further guidance about the types of dress-related activities that are compensable under the FLSA. One such regulation, 29 C.F.R. § 790.8(c), describes "principal activity" as follows:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

50. More recently, in an advisory memorandum regarding the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the DOL reiterated its view that the FLSA requires compensation for donning and doffing safety gear when the donning and doffing activities must be performed at work. The DOL opined:

> Therefore, the time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. … However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [worksite].

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at *https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2*.[2]

---

[2] In light of the Supreme Court's opinion in *Steiner*, numerous Circuit Courts have endorsed the compensability of donning and doffing safety gear. *See, e.g.*, *Franklin v. Kellogg Co.,* 619 F.3d 620 (6th Cir. 2010) (holding that donning and doffing food protective clothing and safety gear was "integral and indispensable" to the principal activity of the employment"); *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 278 (1st Cir. 2004) (agreeing with district court "that the donning and doffing of required gear is an integral and indispensable part of Employees' principal activities"); *Alvarez v. IBP, Inc.,* 339 F.3d 894, 903 (9th Cir. 2003), *aff'd,* 546 U.S. 21 (2005) (holding donning and

**C. Mid-Shift Off-the-Clock Work**

51. Defendant promised Plaintiff and all Hourly Employees one unpaid 30-minute meal period each shift.

52. At all relevant times, Plaintiff and the Hourly Employees regularly performed compensable work for Defendant during their uncompensated "meal breaks."

53. Defendant instructed, and in some instances verbally threatened, Plaintiff and all Hourly Employees to "work through" their unpaid 30-minute meal period while simultaneously requiring them to manually enter a 30-minute meal period in Defendant's ADP EzLabor timekeeping program even when they performed compensable work during that time.

54. For example, Plaintiff's immediate supervisor, Bob Ditmar, directed Plaintiff to work during his scheduled 30-minute unpaid meal period but instructed him to nevertheless record a 30-minute unpaid meal break in the timekeeping system.

55. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

56. Defendant did not prohibit Plaintiff and the Hourly Employees from working during their "meal breaks." Instead, Defendant routinely suffered or permitted them to perform

---

doffing protective gear was "integral and indispensable" to plaintiffs' principal activities of employment).

such work and routinely failed to ensure that work was not being performed during their "meal breaks[,]" while still requiring them to record a full 30-minute unpaid meal period in the timekeeping system.

57. Defendant knew or should have known that Plaintiff and the Hourly Employees performed work during their unpaid "meal breaks" because, *inter alia*, Plaintiff and the Hourly Employees performed such work for Defendant on Defendant's premises, in plain sight, and at management's request.

58. Upon information and belief, Defendant never: (1) informed Plaintiff or other Hourly Employees that they were permitted to record the 30-minute meal period as compensable time if they performed work during that period rather than entering it as unpaid time; (2) provided Plaintiff or other Hourly Employees with a meaningful means to modify or correct the manually entered unpaid 30-minute meal period to reflect time actually worked; or (3) corrected the unpaid 30-minute meal period entry in instances where Plaintiff and the Hourly Employees performed work during that time.

59. Despite knowing that Plaintiff and the Hourly Employees worked during their "meal breaks," and received, accepted, and enjoyed the benefits from such work, Defendant failed to compensate them for it.

### D. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claim</u>

60. "There are two types of gap time claims: pure gap time claims—when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours—and overtime gap time claims—when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 364 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

61. Plaintiff and the Hourly Employees regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

62. During the workweeks in which Plaintiff and the Hourly Employees did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, for which the Defendant directly benefited.

### E. Defendant Breached Its Agreement to Pay Plaintiff And the Hourly Employees Their Regular Hourly Rates for Each Hour Worked

63. In consideration for Plaintiff's work as an Hourly Employee, Defendant promised to pay Plaintiff a specific hourly wage for each hour that he worked for Defendant.

64. In approximately September 2022, Plaintiff accepted Defendant's offer of employment and started working for Defendant, creating a valid contract between Defendant and Plaintiff whereby Defendant was obligated to pay Plaintiff his regular hourly rate of pay for each hour that Plaintiff worked for Defendant, including the donning/doffing described herein.

65. Throughout Plaintiff's employment with Defendant as an Hourly Employee, Plaintiff performed all of the work required by Defendant, including the donning and doffing described herein. In performing this work, Plaintiff fulfilled all of his duties under the contract.

66. However, throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached the contract by not paying Plaintiff the promised hourly rate of pay for the donning and doffing described herein.

67. Defendant's failure to pay Plaintiff for each hour of work performed that was required of Plaintiff as an Hourly Employee, constituted a material breach by Defendant of the parties' contract.

68. Because of Defendant's breaches, Plaintiff was deprived of wages owed to Plaintiff under the contract, including unpaid "gap time" wages.

69. Upon information and belief, all the other Hourly Employees who worked for Defendant had a similar valid contract with Defendant.

70. Upon information and belief, Defendant repeatedly and systematically breached its contracts with all other Hourly Employees it employed in the same way that it breached its contract with Plaintiff.

71. Defendant's contractual promises to pay Plaintiff and other Hourly Employees their promised hourly rate for each hour worked are evidenced by, among other things, each earnings statement issued to Plaintiff.

72. Plaintiff and the Hourly Employees are owed wages at their promised hourly wage rates for the time that they worked off-the-clock during their employment with Defendant, including unpaid "gap time" wages.

73. Plaintiff and the Hourly Employees earned these wages when they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and the Hourly Employees no later than the payday for the period in which the off-the-clock work was performed.

74. The fact that Defendant deliberately chose not to compensate Plaintiff and the Hourly Employees for this work, and that the off-the-clock work was performed before and after Plaintiff's and the Hourly Employees' scheduled shifts, including during unpaid meal periods, did not in any way relieve Defendant of its contractual obligations to pay the Plaintiff and other Hourly Employees for this time.

75. Defendant was contractually obligated to pay Plaintiff and the Hourly Employees their promised rates of pay for *all hours worked*, including hours worked before and after their scheduled work shifts, because that is what the parties agreed to in their contract.

**F. <u>Defendant Benefited from Plaintiff and the Hourly Employees' Off-the-Clock Work</u>**

76. At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiff and the Hourly Employees in connection with the above-described donning/doffing and mid-shift meal-period work and knew it was occurring off the clock and without compensation.

77. Plaintiff and the Hourly Employees' donning/doffing and mid-shift meal-period activities conferred a benefit on Defendant in that they were ready to work in the required PPE at the beginning of their scheduled shift and that Defendant saved labor costs it would have spent had it paid Plaintiff and the Hourly Employees for that work.

78. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and the Hourly Employees.

79. At all relevant times, Defendant was able to track the amount of time Plaintiff and the Hourly Employees spent in connection with the donning and doffing activities. However, Defendant failed to do so and failed to pay Plaintiff and the Hourly Employees for all compensable work performed.

80. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the Hourly Employees in order to require or pressure them into performing the donning and /doffing activities without pay.

81. Defendant expressly trained and instructed Plaintiff and the Hourly Employees to begin performing the above-described donning/doffing activities outside of their scheduled shift times so that they were prepared to engage in their production activities prior to the start of their shifts.

82. At all relevant times, Defendant's policies and practices deprived Plaintiff and the Hourly Employees of wages owed for the donning/doffing activities they performed. Because Plaintiff and the Hourly Employees regularly worked forty (40) hours or more per week, Defendant's policies and practices also deprived them of overtime pay.

83. Defendant knew or should have known that the time spent by Plaintiff and the Hourly Employees in connection with the donning/doffing activities was compensable under the law. Indeed, in light of the explicit DOL guidance and Supreme Court case law cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

84. Despite knowing Plaintiff and the Hourly Employees performed work before and after their scheduled work shifts, Defendant failed to make any effort to stop or disallow the pre- and post-shift work and instead suffered or permitted it to happen.

85. Depending on when the uncompensated work was performed, unpaid wages related to the pre- and post-shift work described herein are owed to Plaintiff and the Hourly Employees at the FLSA mandated overtime premium or at their standard rate of pay.

**The Regular Rate of Pay**

86. Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

87. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment

(except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

88. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendant carries the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo*., 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

89. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

90. In addition to the base rate of pay, Defendant incorporated shift premiums and non-discretionary remuneration into its payment structure.

91. Throughout their employment with Defendant, Plaintiff and other Hourly Employees earned shift premium pay and other non-discretionary remuneration.

92. Plaintiff's and the Hourly Employees' "total remuneration" included not only their base hourly pay, but also shift premium pay and other non-discretionary remuneration. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in

the computation of the established basic rate….”; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and “such extra premiums as nightshift differentials… and premiums paid for hazardous, arduous, or dirty work.”).

93. Defendant’s shift premium and other non-discretionary remuneration does not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

94. However, Defendant failed to incorporate the shift premium pay and/or other non-discretionary remuneration into its Hourly Employees’ regular hourly rate calculation, resulting in *prima facie* violations of the FLSA.

95. Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and all other Hourly Employees were entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

96. Plaintiff and all other Hourly Employees regularly worked in excess of forty (40) hours a week and were paid some overtime for those hours but at a rate that did not include Defendant’s shift premium or other non-discretionary remuneration as required by the FLSA.

97. For example, Plaintiff’s pay stub for the pay period October 25, 2025 through November 7, 2025 shows 103.25 hours of work, a base hourly rate of $25.83 (an overtime rate of $38.75 (1.5 times the base rate)), and gross earnings of $7,068.41, inclusive of $317.41 in shift premium pay. However, Plaintiff’s overtime rate does not include the shift premium pay or other non-discretionary pay and, therefore, Defendant violated the FLSA.

98. To the extent that any of Defendant’s premium compensation paid to Plaintiff and all other Hourly Employees could be qualified and applied as a credit under 29 U.S.C. §§

207(7)(h), those credits may only be applied to the same workweek or work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc.*, 308 F. 3d 580, 590-92 (6th Cir. 2002).

99. In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (flsa), 1985 WL 304329 at 3 (1985).

100. As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and all other Hourly Employees for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

## FLSA COLLECTIVE ACTION ALLEGATIONS

101. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of all of Defendant's current and former Hourly Employees who work or have worked for Defendant in the United States at any time in the past three years.

102. Plaintiff and putative Collective members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, Plaintiff and putative Collective members were all: (1) classified as non-exempt hourly employees; (3) eligible for overtime compensation; (3) subject to the same payroll practices through which Defendant failed incorporate shift premium pay and/or nondiscretionary remuneration into the regular rate calculation as required by the FLSA; and (4) subject to Defendant's pre-, mid-, and post-shift off-the-clock practices, including donning and doffing activities, resulting in underpayment of wages.

103. Upon information and belief, Defendant utilized a centralized payroll system which calculated payroll for all similarly situated employees in the same or similar manner, regardless of location or state in which they worked.

104. Resolution of this action requires inquiry into common facts and legal issues applicable to all members of the proposed Collective.

105. These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

106. Court-authorized notice pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct means including email and text messaging and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

107. Upon information and belief, there are thousands of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

108. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> *All current and former Hourly Employees who work or have worked for Defendant in the United States at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

109. The members of the Rule 23 Nationwide Class are so numerous that joinder of all

Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

110. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the off-the-clock work Rule 23 Nationwide Class members spent performing electrostatic checks and during their unpaid meal periods each shift is compensable time under applicable law; and

b. Whether Defendant received and accepted valuable off-the-clock services from Plaintiff and the Rule 23 Nationwide Class members without compensating them for the reasonable value of those services.

111. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

112. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and his retained counsel who are qualified and experienced in the prosecution of wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

113. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

114. This case will be manageable as a Rule 23 Nationwide Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

115. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

116. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

117. Plaintiff re-alleges and incorporates the foregoing paragraphs as if fully restated herein.

118. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

119. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

120. At all times relevant to this action, Plaintiff and the FLSA Collective members

were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

121. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

122. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

123. Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

124. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

125. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

126. At all relevant times, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week..

127. Defendant maintained an unlawful off-the-clock work policy that did not comply with 29 C.F.R. § 785.48(b) because the policy did not "average out so that the employees [we]re fully compensated for all the time they actually work," and instead "result[ed], over a period of time, in a failure to compensate the employees properly for all the time they have actually worked."

*Id*.

128. Defendant could have easily tracked and recorded all of the off-the-clock work Plaintiff and the proposed Collective Members performed but did not.

129. At all relevant times, Defendant also engaged in an unlawful policy and practice of failing to include shift premium pay and/or non-discretionary remuneration in its Hourly Employees' regular-rate calculations.

130. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how much time Plaintiff and the Hourly Employees spent working off-the-clock to complete Defendant's electrostatic checks and could have properly compensated Plaintiff and the proposed Collective Members for the off-the-clock work they performed but did not.

131. As a result of Defendant's willful failure to compensate Plaintiff and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

132. Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA

29 U.S.C. § 211(c).

133. Plaintiff and all others similarly situated are entitled to back pay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

134. Plaintiff re-alleges and incorporates all previous paragraphs herein.

135. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

136. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for hourly work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

137. Defendant breached its contractual promises by failing to pay Hourly Employees at their fixed, pre-agreed upon hourly rate for all of the hours worked.

138. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid

off-the-clock work that was required of them as described herein.

139. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

140. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

141. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

142. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

143. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## QUANTUM MERUIT/UNJUST ENRICHMENT

144. Plaintiff re-alleges and incorporates all previous paragraphs herein.

145. At all times relevant to this action, Plaintiff and every other Rule 23 Nationwide Class member performed valuable services for Defendant by doing their jobs and carrying out their

required work duties, which included the off-the-clock work described herein.

146. The off-the-clock work activities described above were integral and indispensable to Plaintiff and the Rule 23 Nationwide Class members' job duties and were necessary for Defendant's business operations and conferred a direct benefit upon Defendant.

147. Additionally, the off-the-clock work was not gratuitous and Plaintiff and the Rule 23 Nationwide Class members performed it at the request of and without objection by Defendant.

148. Defendant received and accepted the above-referenced off-the-clock work from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

149. Defendant retained and continues to retain the benefits of Plaintiff's and the Rule 23 Nationwide Class members' uncompensated labor under circumstances that make it inequitable and unjust for Defendant to do so without paying for the reasonable value of those services.

150. Defendant was reasonably notified, and knew or should have known, that Plaintiff and every Rule 23 Nationwide Class member expected to be paid their regular hourly rate for all hours worked (and 1.5 times their regular hourly rate for all hours worked in excess of forty (40) in a workweek), including the off-the-clock work Defendant suffered and/or permitted them to perform.

151. Defendant's retention of the benefits of Plaintiff's and the Rule 23 Nationwide Class members' uncompensated labor is unjust because Defendant knew that such work was being performed, knowingly accepted the benefits of that work, failed to pay for it, and saved labor costs at the Plaintiff and the Rule 23 Nationwide Class members' expense.

152. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work and failed to compensate them for the reasonable value of the

services they provided.

153. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

154. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages and the value of the uncompensated services they rendered, and Defendant was unjustly enriched by retaining the economic value of that labor without payment.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the following relief:

a. Designation of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all current and former hourly employees who work or have worked for Defendant at any time in the past three years. This list shall include the last known addresses, email addresses, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate.

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and quantum meruit/unjust enrichment claims (Counts II and III);

c. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

d. A complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

e. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

f. An Order declaring Defendant's violations of the FLSA were willful;

g. A declaratory judgment that Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class members by failing to pay them for each hour they worked at a pre-established (contractual) base hourly rate;

h. A declaratory judgment that Defendant is liable to Plaintiff and the Rule 23 Nationwide Class under theory of quantum meruit for the reasonable value of the off-the-clock services they rendered to Defendant;

i. An Order declaring that Defendant was unjustly enriched by the uncompensated off-the-clock and gap-time work it required and accepted from Plaintiff and the Rule 23 Nationwide Class members;

j. A monetary judgment awarding full back pay and an equal amount in liquidated damages;

k. An award of pre-judgment and post-judgment interest;

l. An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of a service payment to the named Plaintiff; and

m. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, Alexander Harris, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues in this complaint that are so triable as a matter of right.

Date: March 5, 2026

Respectfully submitted,

*/s/ Travis M. Hedgpeth*
Travis M. Hedgpeth
**THE HEDGPETH LAW FIRM, PC**
13907 Bluff Ivey Lane
San Antonio, Texas 78216
(512) 417-5716
travis@hedgpethlaw.com

Kevin J. Stoops (P64371)*
**SOMMERS SCHWARTZ, P.C.**
1 Towne Sq., 17th Floor
Southfield, Michigan 48375

(248) 355-0300
**(pro hac vice forthcoming)*

*Attorneys for Plaintiff and the Proposed Collective*